Christin Cho (Cal. Bar No. 238173)
christin@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: (310) 656-7069

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Edward Galvez, individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> v. <br><br> SpotHero, Inc., <br><br> *Defendant.* | Case No. 2:25-cv-02974 <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

# Table of Contents

I.    Introduction.................................................................................................. 1

II.   Parties. ......................................................................................................... 3

III.  Jurisdiction and Venue................................................................................ 3

IV.   Facts. ............................................................................................................ 4

    A.    Drip pricing is unfair and illegal. .......................................................... 4

    B.    SpotHero's checkout process................................................................. 6

    C.    Plaintiff purchased from SpotHero. .................................................... 10

    D.    No adequate remedy at law. ................................................................ 10

    E.    Class Action Allegations. .................................................................... 11

VI.   Claims. ....................................................................................................... 12

    First Cause of Action: Violation of California's Consumer Legal Remedies
        Act. .................................................................................................... 12

    Second Cause of Action: Unfair Competition Law (By Plaintiff and the
        California Subclass)............................................................................ 14

    Third Cause of Action: Quasi-Contract ................................................. 16

VII.  Prayer for Relief. ....................................................................................... 16

## I.    Introduction.

1.    In recent years, companies that sell goods and services have sought to boost revenues by adding junk fees.  One example is the use of "drip pricing," where companies "advertise only part of a product's total price to lure in consumers, and do not mention other mandatory charges until late in the buying process."[1]  Such fees are deceptive or unfair "because they are disclosed only at a later stage in the consumer's purchasing process."[2]  "Drip pricing interferes with consumers' ability to price compare. It manipulates consumers into paying fees that are either hidden entirely or not presented until late in the transaction, after the consumer already has spent significant time selecting and finalizing a product or service plan to purchase."[3]

2.    This is costly for consumers, who "are paying billions of dollars a year in unnecessary, unavoidable, or surprise charges that inflate prices while adding little to no value.  These junk fees, which are often not disclosed upfront and only revealed after a consumer has decided to buy something, obscure true prices and dilute the forces of market competition that are the bedrock of the U.S economy."[4]  As the Federal Trade Commission notes, "American consumers, workers, and small businesses today are

---

[1] *Bringing Dark Pattern to Light*, FTC Staff Report (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf

[2] https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011

[3] *Bringing Dark Pattern to Light*, FTC Staff Report (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf

[4] https://www.whitehouse.gov/wp-content/uploads/2023/03/WH-Junk-Fees-Guide-for-States.pdf

Class Action Complaint                    1                    Case No. 2:25-cv-02974

swamped with junk fees that frustrate consumers, erode trust, impair comparison shopping, and facilitate inflation."[5]

3.    In addition to harming consumers, drip pricing is illegal under California law.  The False Advertising Law (FAL) prohibits businesses from making or disseminating any statement that is "untrue or misleading" in connection with the sale of goods or services (Cal. Bus. & Prof. Code § 17500). Similarly, the Unfair Competition Law (UCL) broadly prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising" (Cal. Bus. & Prof. Code § 17200).

4.    In addition, in 2023, California passed SB 478, which expressly targets drip pricing.  It states, "This act is intended to specifically prohibit drip pricing, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service."[6]

5.    SB 478 amended the Consumer Legal Remedies Act (CLRA) to make drip pricing illegal under the CLRA beginning on July 1, 2024.  But the legislature also acknowledged that drip pricing was already illegal under California's other consumer protection statutes: "This practice…is prohibited by existing statutes, including the Unfair Competition Law (Chapter 5 (commencing with Section 17200) of Part 2 of Division 7 of the Business and Professions Code) and the False Advertising Law (Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code)."  SB 478(b).

6.    Thus, California's statutory scheme is as follows: drip pricing is, and always has been, illegal under California's Unfair Competition Law and False Advertising Law.

---

[5] https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011
[6] SB 478, available at https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=202320240SB478.

Starting July 1, 2024, drip pricing is additionally illegal under California's Consumer Legal Remedies Act.

7.      SpotHero, Inc. is a company that sells parking reservations.  SpotHero has used drip pricing to sell its parking reservations—advertising one price for the parking spots, only to tack on mandatory "processing" fees at the very end.  This lawsuit follows.

## II.      Parties.

8.      Edward Galvez is domiciled in San Pedro, California.

9.      The proposed class includes citizens of California.

10.      Defendant SpotHero, Inc. is a Delaware corporation with its principal place of business in Chicago, Illinois.

## III.      Jurisdiction and Venue.

11.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2).  The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

12.      The Court has personal jurisdiction over Defendant because Defendant sold parking reservations to consumers in California, including to Plaintiff.

13.      Venue is proper under 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because Defendant would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold parking reservations to consumers in this District, including Plaintiff.  Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

## IV. Facts.

### A. Drip pricing is unfair and illegal.

14. "As more and more commerce has moved online, so too have manipulative design practices—termed 'dark patterns" that "trick or manipulate users into making choices they would not otherwise have made and that may cause harm."[7]

15. One example of a dark pattern is drip pricing, in which companies "advertise only part of a product's total price to lure in consumers, and do not mention other mandatory charges until late in the buying process."[8]  Companies advertise one price, and then load the purchase up with additional fees at the end of the checkout process.  The goal of this is to conceal the true cost of the product or service, and prevent comparison shopping.  The consumer selects and decides to purchase the product or service based on a lower advertised price, but ends up paying more because of junk fees that are tacked on at the end.

16. The Federal Trade Commission has stated that junk fees are "deceptive or unfair," "because they are disclosed only at a later stage in the consumer's purchasing process."[9]  "Drip pricing interferes with consumers' ability to price-compare and manipulates them into paying fees that are either hidden entirely or not presented until late in the transaction, after the consumer already has spent significant time selecting and finalizing a product or service plan to purchase."[10]  By then, consumers have already committed to the purchase.

---

[7] *Bringing Dark Pattern to Light*, FTC Staff Report (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf

[8] *Id.*

[9] https://www.federalregister.gov/documents/2022/11/08/2022-24326/unfair-or-deceptive-fees-trade-regulation-rule-commission-matter-no-r207011

[10] *Bringing Dark Patterns to Light*, FTC Staff Report, at 9 (September 2022), available at https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%209.14.2022%20-%20FINAL.pdf

17.    Drip pricing costs consumers a lot of money.  In addition, it harms consumers because it can "weaken competition by making it harder for consumers to price-compare across sellers.  An honest business that sets forth the total price of its product at the outset will be at a significant disadvantage when compared to a seller that advertises an artificially low price to draw consumers in, then adds mandatory charges late in the transaction."[11]

18.    Thus, the Federal Trade Commission has warned that "companies should include any unavoidable and mandatory fees in the upfront, advertised price."  "Failure to do so has the potential to deceive consumers in violation of the FTC Act."[12]

19.    Because drip pricing is unfair and deceptive, it is also illegal under the FTC Act.  Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."  And, the FTC has "federal rule-making authority to issue industry-wide regulations (Rules and Guides) to deal with common unfair or deceptive practices and unfair methods of competition."[13]  Because drip pricing is unfair and deceptive in violation of the FTC Act, the FTC has proposed specific rules banning junk fees under its rulemaking authority.[14]

20.    Drip pricing is also illegal under California law.  As explained above, this unfair and deceptive practice has long been prohibited under California law, including under California's Unfair Competition Law.

21.    In addition, since SB 478 went into effect, drip pricing—namely, "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" other than taxes and shipping—is one of the enumerated practices expressly prohibited under the CLRA.  SB 478.  By making drip pricing a

---

[11] *Id.*

[12] *Id.*

[13] https://www.ftc.gov/enforcement/rulemaking

[14] https://www.federalregister.gov/documents/2023/11/09/2023-24234/trade-regulation-rule-on-unfair-or-deceptive-fees

violation of the CLRA, SB 478 made punitive damages, attorneys fees, and statutory damages available to consumers who sue companies for this unfair and illegal practice.

**B.  SpotHero's checkout process.**

22.    Through at least March 2025 [15], SpotHero used drip pricing, and hid the true price of the parking spot until the purchase was almost complete.

23.    When a consumer visited Defendant's website, spothero.com, SpotHero advertised parking spots for various locations.  For example:



---

[15] In late March, Plaintiff sent SpotHero a notice letter regarding its drip pricing practices.  In response to receiving the notice letter, on or about April 1, 2025, SpotHero appears to have changed its practices, and now discloses the full price including service fees, upfront.



24.    After selecting a location and date or time, consumers were taken to the next page.  On the next page, SpotHero would depict a location map with available parking spots and prices.  In the example below, the price of parking at King's Motel LAX was $24.50.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16    25.    After the consumer selected the parking spot (here, for $24.50), SpotHero

17  displayed another page.  But on the new page, the price has gone up.  In the example

18  below, the cost has gone from $24.50 to $28.50:

19
20
21
22
23
24
25
26
27
28



26.    This is because SpotHero has added a junk fee labelled as a "Service Fee," which is disclosed for the first time after the consumer has already selected the parking spot at a lower price.  The service fees are not taxes, government fees, postage, or carriage charges; instead, they are charges to help "cover the costs of running" SpotHero and "providing services."



27.    Because SpotHero waited until the end of the checkout process to disclose the additional junk fees it added to each order, and the true price of its products, it was

Class Action Complaint                    9                    Case No. 2:25-cv-02974

difficult for consumers to accurately compare prices across different parking reservation sellers.  For example, if SpotHero accurately disclosed its true price, consumers could compare across parking platforms and select the lower price.  SpotHero's practice of adding fees at the end frustrated comparison shopping, impeded competition, and led consumers to pay more for their parking spots than they otherwise would.

### C.    Plaintiff purchased from SpotHero.

28.    In or around December 2024, Mr. Galvez purchased a parking reservation online through SpotHero's website, www.spothero.com.  At the time, Mr. Galvez was living in San Pedro, California.

29.    During checkout, SpotHero represented that the parking reservation would cost $15.  Mr. Galvez believed that the parking reservation would cost $15.  But at the end of the checkout, SpotHero added a Service Fee of $1.09, making the actual reservation price $16.09 (and not $15, as SpotHero had previously represented).

30.    Plaintiff was harmed by paying SpotHero's illegal and unfair junk fee.  If SpotHero had not used hidden fees, Plaintiff would not have bought parking through Defendant's service, or would have paid less for it.

31.    Plaintiff faces an imminent threat of future harm.  Plaintiff would purchase parking reservations from Defendant again in the future if he could feel sure that Defendant was not using drip pricing.  But without an injunction, Plaintiff has no realistic way of knowing that Defendant will not add junk fees later in the checkout process.

### D.    No adequate remedy at law.

32.    Plaintiff seeks damages and, in the alternative, restitution.  Plaintiff is permitted to seek equitable remedies in the alternative because he has no adequate remedy at law.  Plaintiff also seeks an injunction.  Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.  Legal remedies here are not adequate because they would not stop Defendant from continuing to engage in the practices described above.  Plaintiff's remedies at law are also not equally

prompt or efficient as their equitable ones.  For example, the need to schedule a jury trial may result in delay.  And a jury trial will take longer, and be more expensive, than a bench trial.

**E.    Class Action Allegations.**

33.    Plaintiff brings the asserted claims on behalf of the proposed classes of:

- The California Class: all persons who, while in the state of California and within the applicable statute of limitations, purchased parking spots from Defendant and paid hidden Service Fees;

- The CLRA Subclass: all persons who, while in the state of California, and on or after July 1, 2024, purchased parking spots from Defendant and paid hidden Service Fees.

34.    The following people are excluded from the proposed class: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons

**Numerosity & Ascertainability.**

35.    The proposed class contains members so numerous that separate joinder of each member of the class is impractical.  There are thousands or tens of thousands of class members.

36.    Class members can be identified through Defendant's sales records and public notice.

**Predominance of Common Questions.**

37.    There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

- whether SpotHero's drip pricing is illegal under California consumer protection laws;
- what damages are needed to reasonably compensate Plaintiff and the proposed class.

**Typicality & Adequacy.**

38.    Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff reserved parking spots from SpotHero. There are no conflicts of interest between Plaintiff and the class.

**Superiority.**

39.    A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

**VI.    Claims.**

<u>**First Cause of Action:**</u>

**Violation of California's Consumer Legal Remedies Act.**

**(By Plaintiff and the CLRA Subclass)**

40.    Plaintiff incorporates each and every factual allegation set forth above.

41.    Plaintiff brings this cause of action individually and on behalf of the CLRA Subclass.

42.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase SpotHero parking spots and to pay a price premium for those spots.

43.    Plaintiff and the CLRA Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

44.    Plaintiff and the CLRA Subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

45.    The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods or services to consumers.

46.    As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to class members.

47.    As alleged more fully above, Defendant advertised, displayed, and offered a price for a good or service that does not include all mandatory fees or charges.

48.    Defendant violated, and continues to violate, section 1770(a)(29) of the California Civil Code.  Defendant violates this by advertising, displaying, or offering a price for its parking spots that do not all the mandatory fees or charges (other than taxes, government fees, postage, or carriage charges).

49.    Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers.  Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

50.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the parking spot. Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

51.    In addition, subclass-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the parking spot reservations.

52.    Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the subclass.

53.     Plaintiff and subclass members were injured as a direct and proximate result of Defendant's conduct because (1) they paid illegal and unfair junk fees, and/or (2) they overpaid for the parking spot reservations because they are sold at a price premium due to the hidden fees.

54.     Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of himself and all other members of the CLRA subclass, seeks injunctive relief.

55.     CLRA § 1782 NOTICE.  On March 20, 2025, a CLRA demand letter was sent to Defendant's headquarters and registered agent via certified mail (return receipt requested), that provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here.  If Defendant does not fully correct the problem for Plaintiff and for each member of the CLRA Subclass within 30 days of receipt, Plaintiff and the CLRA Subclass will seek all monetary relief allowed under the CLRA.

56.     A CLRA venue declaration is attached.

## Second Cause of Action:

### Unfair Competition Law (By Plaintiff and the California Subclass)

57.     Plaintiff incorporates each and every factual allegation set forth above.

58.     Plaintiff brings this cause of action individually and on behalf of the California Class.

59.     Defendant has violated California's Unfair Competition Law (UCL) by engaging in unfair and unlawful conduct.

**The Unlawful Prong.**

60.     Defendant engaged in unlawful conduct by violating the CLRA, the FTC Act, and the unfair prong of the UCL, as alleged above and throughout.

**The Unfair Prong.**

61.     Defendant's conduct is unfair because the harm to the consumer greatly outweighs the public utility of Defendant's conduct.  There is no public utility to using junk fees.  Junk fees mislead consumers on price, and prevents comparison shopping

Class Action Complaint                    14                    Case No. 2:25-cv-02974

and competition.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Hidden and late-disclosed fees only injure healthy competition and harm consumers.  And companies could easily disclose any such fees upfront.

62.    Defendant violated established public policy by violating the CLRA and the FTC Act, as alleged above and incorporated here.  The unfairness of this practice is tethered to a legislatively declared policy (that of the CLRA and the FTCA).

63.    Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

64.    The harm to Plaintiff and the California Class greatly outweighs the public utility of Defendant's conduct.  There is no public utility to misrepresenting the price of a parking spots.  This injury was not outweighed by any countervailing benefits to consumers or competition.  Misleading consumer products only injure healthy competition and harm consumers.

65.    Plaintiff and the California Class could not have reasonably avoided this injury.  As alleged above, Defendant's fees were not disclosed until after consumers select their parking spots.  By then, the harm was done.

66.    Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing the parking spot.  Defendant's misrepresentations were a substantial factor in Plaintiff's purchase decision.

67.    In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy the parking spot reservations.

68.    Defendant's use of hidden fees were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California class.

69.    Plaintiff and the California class were injured as a direct and proximate result of Defendant's conduct because (1) they paid illegal and unfair junk fees, and/or

(2) they overpaid for the parking spots because they are sold at a price premium due to the hidden fees.

**Third Cause of Action:**

**Quasi-Contract**

**(By Plaintiff and the California Subclass)**

70.    Plaintiff incorporates each and every factual allegation set forth above.

71.    Plaintiff brings this cause of action individually and on behalf of the California class.

72.    As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the California Class to purchase SpotHero parking reservations and to pay a price premium for those parking spots.

73.    Defendant's unlawful and unfair fees caused Plaintiff and the class to overpay for the parking spots.

74.    In this way, Defendant received a direct and unjust benefit, at Plaintiff and the California Class's expense.

75.    Plaintiff and the California Class seek restitution.

**VII.    Prayer for Relief.**

76.    Plaintiff seeks the following relief for herself and the class and subclass:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class and subclass;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## **Demand For Jury Trial**

77.    Plaintiff demands the right to a jury trial on all claims so triable.


Dated: April 4, 2025                     Respectfully submitted,

                                        By: _/s/ Christin Cho_____

                                        Christin Cho (Cal. Bar No. 238173)
                                        christin@dovel.com
                                        Simon Franzini (Cal. Bar No. 287631)
                                        simon@dovel.com
                                        DOVEL & LUNER, LLP
                                        201 Santa Monica Blvd., Suite 600
                                        Santa Monica, California 90401
                                        Telephone: (310) 656-7066
                                        Facsimile: (310) 656-7069

                                        *Attorneys for Plaintiff*